IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**ADVANCED FLEXIBLE CIRCUITS, INC.**,

    **Plaintiff,**

    v.

**GE SENSING & INSPECTION TECHNOLOGIES GMBH, et al.**,

    **Defendants.**

**Civil No. 10-1069 (GAG)**

**OPINION AND ORDER**

Advanced Flexible Circuits, Inc. ("AFC") brings this action against GE Sensing & Inspection Technologies GMBH ("GE Sensing") and GE Sensing, Division of Caribe GE International of Puerto Rico, Inc. ("GE PR") (collectively "Defendants") seeking pre-contractual damages under Puerto Rico law. (See Docket No. 1.)

Presently before the court are four motions for summary judgment (Docket Nos. 68, 69, 70 & 97). After reviewing these submissions and the pertinent law, the court **GRANTS** the motions at Docket Nos. 68 and 70, **DENIES** the motion at Docket No. 97, and finds the motion at Docket No. 69 to be **MOOT**.

**I.**     **Standard of Review**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Anderson v.

**Civil No. 10-1069 (GAG)**  2

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id.

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The burden then shifts to the non-movant to establish the existence of at least one genuine and material fact in dispute. Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001) (citing Maldonado-Denis, 23 F.3d at 581). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted).

The non-moving party must "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The non-movant "cannot rest upon mere allegation or denial of the pleadings." Fed. Deposit Ins. Corp. v. Municipality of Ponce, 904 F.2d 740, 742-43 (1st Cir. 1990) (citing FED.R.CIV.P. 56)). That is, "[t]o defeat a motion for summary judgment, evidence offered by the non-movant must be significantly probative of specific facts." Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (citations omitted) (internal quotation marks omitted). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion." Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 15 (1st Cir. 2007) (citations omitted). Rather, "the nonmovant must present definite, competent evidence to rebut the motion." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) (citations omitted) (internal quotation marks omitted).

If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. Martinez-Rodriguez v. Guevara, 597 F.3d 413, 419 (1st Cir. 2010) (citing Liberty Lobby, 477 U.S. at 248). Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality

**Civil No. 10-1069 (GAG)**  3

of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

## II.     Procedural Background

AFC initiated the instant action for damages on January 29, 2010. (See Docket No. 1.) On May 14, 2010, Defendants filed a motion to dismiss the complaint for insufficiency of process and failure to state a claim for which relief may be granted. (See Docket No. 10.) On June 8, 2010, the court dismissed all claims against GE Sensing for insufficiency of service because AFC had "failed to comply with the rules concerning service of process on foreign corporations." (See Docket No. 14.) Finding the complaint was based solely on unsupported legal conclusions, the court also dismissed all claims against GE PR. (See id.) A motion to set aside judgment (Docket No. 16) was later granted (Docket No. 17). In denying a second motion to dismiss, the court held the only cause of action properly pleaded against both defendants was one for pre-contractual damages under Puerto Rico law. (See Docket No. 27.)

GE Sensing moved for summary judgment on September 6, 2011 (Docket No. 68), arguing AFC cannot provide sufficient evidence to establish a *culpa in contrahendo* claim. GE Sensing simultaneously filed an alternative motion for partial summary judgment (Docket No. 69) in the event that the court denied its original motion for summary judgment at Docket No. 68. Also on September 6, 2011, GE PR filed a motion for summary judgment (Docket No. 70) joining GE Sensing's arguments in the motions at Docket Nos. 68 and 69.

AFC originally filed a motion for partial summary judgment (Docket No. 66) on August 19, 2011. The court denied said motion for failure to comply with Federal Rule of Civil Procedure 56(a), and allowed AFC the opportunity to re-file it in compliance with the Federal Rules of Civil Procedure. (See Docket No. 96.) AFC filed a renewed motion for partial summary judgment (Docket No. 97) on March 31, 2012. Oppositions to all motions were filed (Docket Nos. 76, 77, 78 & 99).

## III.    Preliminary Issues

### A.     Failure to Comply with Local Rule 56

Pursuant to Local Rule 56, an opposing statement of material facts "shall admit, deny or qualify the facts supporting the motion for summary judgment." L.Cv.R. 56(c) (D.P.R. 2010).

**Civil No. 10-1069 (GAG)**　　　　　　　　　　　4

"Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule." Id. Local Rule 56(e) requires record citations in a "statement of material facts" to be cited to "the specific page or paragraph of identified record material supporting the assertion." L.Cv.R. 56(e) (D.P.R. 2010). "The court may disregard any statement of fact not supported by a specific citation." Id. "The purpose of this rule is to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Capital Mkt. Inv., LLC v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir. 2008). Application of this rule lies within the court's discretion.

　　Looking at AFC's opposing statement of material facts (Docket No. 76), the court notes it is not in compliance with Local Rule 56. The majority of the facts supporting summary judgment are not properly controverted. AFC's opposing statement of material facts does not admit, deny or qualify any fact, nor does it use the words admit, deny or qualify or any synonym thereof to describe its stance regarding each fact. AFC "does not dispute" certain facts, therefore, the court will deem these as properly admitted. (See Docket No. 76 at 1.) However, the facts AFC does not admit are "disputed." (See Docket No. 76 at 1-4 ¶¶ A-V.) By disputing a fact, the court does not understand whether it was AFC's intention to deny or qualify the fact in question.[1]

　　Furthermore, AFC's non-compliance with the Local Rules goes beyond semantics and completely disregards the requirement of record citations. Regardless of whether AFC's use of the word "disputed" was meant to used to deny or qualify, all facts not admitted must be supported by

---

[1] Dispute is not a synonym of deny or qualify. See MERRIAM-WEBSTER'S COLLEGIATE THESAURUS 198, 225, 594 (1988). Black's Law Dictionary defines the word "dispute" as "[a] conflict or controversy, esp. one that has given rise to a particular lawsuit." BLACK'S LAW DICTIONARY 540 (9th ed. 2009). "Dispute" can also mean "to question the truth of[,]" "doubt" and "to oppose in any way." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 415 (4th ed. 1999). To "deny" is to declare a statement untrue, to contradict, "to refuse to accept as true or right." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 387 (4th ed. 1999). A "denial" is "[a] refusal or rejection." BLACK'S LAW DICTIONARY 499 (9th ed. 2009) To "qualify" is "to modify; restrict; limit; make less positive." WEBSTER'S NEW WORLD COLLEGE DICTIONARY 1173 (4th ed. 1999). Black's Law Dictionary defines "qualification" as "[a] modification or limitation of terms or language." BLACK'S LAW DICTIONARY 1360 (9th ed. 2009).

**Civil No. 10-1069 (GAG)**                                5

a record citation. AFC does not submit the appropriate references to the record for any of its "disputed" facts, and thus, has not properly controverted GE Sensing's facts supporting summary judgment, which are properly supported by record citations. (See Docket No. 68-1 at 1-9 ¶¶ 1-39.)

The court does not have an "independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L.Cv.R. 56(e). It is unconscionable that any party would request the court to read the entire record in order to discern its legal argument. Id. In the case at bar, there is no reference to any part of the record anywhere in AFC's opposing statement of material facts (Docket No. 76). The First Circuit has "repeatedly . . . emphasized the importance of local rules similar to Local Rule 56." Caban Hernandez v. Phillip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007). "Such rules were inaugurated in response to [the First Circuit's] concern that, without them, 'summary judgment practice could too easily become a game of cat-and-mouse.'" Id. (quoting Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)). "Such rules are designed to function as a means of 'focusing a district court's attention on what is –and what is not– genuinely controverted.'" Caban Hernandez, 486 F.3d at 7 (quoting Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006)). Given the vital purpose that Local Rule 56 serves, "litigants ignore [it] at their own peril." Caban Hernandez, 486 F.3d at 7. Accordingly, the court will only consider those parts of AFC's opposition to GE Sensing's statement of uncontested facts that comply with Local Rule 56 –*i.e.*, the facts deemed admitted.

The court highlights that it previously informed AFC on the necessity to comply with Local Rule 56, when it dismissed without prejudice AFC's original motion for partial summary judgment on March 16, 2012. (See Docket No. 96.) More than three months have elapsed since that order, and although AFC has purportedly corrected and re-filed its motion for partial summary judgment, it has not moved to cure its non-compliance with the Local Rules in its opposition to summary judgment (Docket No. 76).

**B.    AFC's Renewed Motion for Partial Summary Judgment**

"Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato

Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (citing Adria Int'l Group, Inc. v. Ferré Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001)) (internal quotation marks omitted). Although each motion for summary judgment must be decided on its own merits, each motion need not be considered in a vacuum. Wells Real Estate, 615 F.3d at 51 (quoting P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks omitted). In the present case, the evidence submitted for the record by AFC in its renewed motion for partial summary judgment (Docket No. 97) relates to the same issues as those submitted by GE Sensing. The evidence and issues are intermingled upon reference and adoption made by the parties in their motions and responses. Accordingly, the court finds that judicial economy requires it to examine the relevant and corresponding findings of fact simultaneously.

### C. Reply Briefs

Local Rule 7 provides the requirements for reply briefs. See L.Cv.R. 7(c) (D.P.R. 2010). The moving party may file a reply memorandum "[w]ith prior leave of Court and within seven (7) days of the service of any objection to a motion[.]" Id. It "shall be strictly confined to replying to new matters raised in the objection or opposing memorandum." Id. A party is not entitled to reply as a matter of right, it should place the court in a position to ascertain whether a reply is indeed warranted. The court will not consider any of Defendants' reply briefs (Docket Nos. 83, 84 & 86) in the instant summary disposition, as leave to file was never sought.

### IV. Factual Background

GE Sensing is a corporation organized under the laws of Germany. (See Docket Nos. 68-1 at 1 ¶ 1; 76 at 1.) It is in the business of assembling equipment used in measurement processes for various industrial applications. (See id.) The equipment assembled by GE Sensing includes component parts of a catheter device manufactured by a third-party and used in the treatment of medical patients. (See Docket Nos. 68-1 at 1 ¶ 2; 76 at 1.) GE Sensing supplies the component parts to its customer, the manufacturer of catheter devices. (See id.)

GE PR is a Puerto Rico limited liability company with an equipment manufacturing and assembling facility located in Añasco, Puerto Rico (the "Añasco facility"). (See Docket Nos. 68-1 at 2 ¶ 3; 76 at 1.) The Añasco facility assembles the aforementioned components of a catheter device.

**Civil No. 10-1069 (GAG)**                                     7

(See id.)  A "heater filament" is one of the catheter components used during assembly by GE PR at the Añasco facility.  (See Docket Nos. 68-1 at 2 ¶ 4; 76 at 1.)  The heater filaments are purchased from a third-party supplier.  (See id.)  GE PR incorporates the heater filaments into the component that is later supplied to the manufacturer of catheter devices.  (See id.)

AFC is a company incorporated in Minnesota.  (See Docket No. 68-4 at 77 ll. 5-7.)  AFC does not have a certificate of authorization to do business in Puerto Rico.  (See id. at 78 ll. 3-6.)  During the period of the negotiations at issue, AFC had one employee, Theresa Bailey ("Bailey"), who acted as President, Secretary and Treasurer.  (See id. at 77-78.)

In the summer of 2006, Manuel Hidalgo ("Hidalgo") of Yes America approached Maritza Cedo ("Cedo"), Material Leader for GE PR,[2] and informed her that he was the sales agent for a company capable of engineering and manufacturing the heater filament that GE PR used in its catheter component assembly.  (See Docket Nos. 68-1 at 2 ¶ 7; 76 at 1.)  Yes America was AFC's sales representative and agent at the time of the transactions at issue.  (See Docket Nos. 68-1 at 2 ¶ 6; 76 at 1.)  It was not until later that Hidalgo identified AFC as the company he represented.  Hidalgo proposed that AFC could supply the heater filaments in addition or as an alternative to the current supplier.  (See Docket No. 68-3 at 2 ¶ 5.)

GE Sensing had one "heater filament" supplier in 2009 and was interested in an additional supplier that could manufacture and supply the heater filaments.  (See Docket No. 68-2 at 2 ¶ 5.)  AFC represented that it was qualified and capable of engineering and manufacturing quality heater filaments and supplying them in the quantities required by GE Sensing.  (See Docket Nos. 68-1 at 3 ¶ 10; 76 at 1.)  AFC further represented that it had experience manufacturing the same type of heater filaments used in the catheter component assembly at the Añasco facility.  (See Docket Nos. 68-1 at 3 ¶ 11; 76 at 1.)

---

[2] According to Cedo's unsworn declaration under penalty of perjury, her responsibilities include "coordinating and monitoring the supply of materials to the Añasco facility . . . including communications with material suppliers, receipt and distribution of quotations from material suppliers, and the preparation of approved orders for material purchases from suppliers."  See *Unsworn Declaration of Maritza Cedo*, Docket No. 68-3 at 1 ¶ 2.

**Civil No. 10-1069 (GAG)**                                8

AFC's proposed supply of heater filaments required AFC to first produce sample filaments that were to be inspected and would be required to pass testing evaluations in order to be approved for later supply. (See Docket Nos. 68-1 at 4 ¶ 15; 76 at 1.) According to Ulrich Angeli ("Angeli"), Senior Manager, Global Commodity Leader for GE Sensing,[3] the heater filaments had to meet particular quality standards for these to be included in the components that were assembled by GE Sensing. (See Docket No. 68-2 at 2 ¶ 8.) Quality standards included mechanical, electrical, and dimensional parameters that had to be validated by testing and inspection before they could be approved for use in the catheter device. (See id.) GE Sensing did not know how to manufacture a heater filament, nor did it have the information as to the exact specifications required for the manufacture of the particular filament. (See Docket No. 68-3 at 2 ¶ 6.)

AFC sent a total of four groups of samples for validation during a two year period,[4] all of which failed qualification testing. (See Docket No. 68-4 at 52-53.) Each group was rejected for different reasons. (See id. at 53.) The validation process for the last group of samples submitted by AFC prior to the negotiations coming to an end was in July 2009. (See id. at 55.) The fourth sample was rejected in August 2009 on account of, among other reasons, issues with its dimensions. (See id. at 98.)

On June 25, 2009, prior to AFC submitting its fourth sample group for testing, Bailey sent Angeli two signed copies of a purchase agreement between AFC and GE Sensing. (See Docket No. 68-6.) The record does not reflect whether GE Sensing signed this purchase agreement. In any event, negotiations between AFC and Defendants for a proposed contract had terminated by September 2009. (See Docket No. 68-2 at 3 ¶ 12.) AFC sent GE Sensing an invoice for $183,232.00 on

---

[3] According to Angeli's unsworn declaration under penalty of perjury, his job responsibilities include the oversight of supply and sourcing activities, specifically managing the processes through which GE Sensing obtains parts, materials or equipment from third-party vendors for use in GE Sensing's business activities. (See Docket No. 68-2 at 1 ¶ 2.)

[4] The court estimates a two year period, approximately, based on the dates given by Bailey in her deposition.

**Civil No. 10-1069 (GAG)**                                            9

September 21, 2009. (See Docket No. 68-7 at 2.) According to the email in which the invoice is attached, the invoice "reflects the development costs and total hours spent by all the participants in the supply chain who contributed to the development and successful outcome of this project." (See id. at 1.) Defendants refused to pay the invoice and litigation ensued.

**V.    Discussion**

A party is not obligated to enter into a contract. Producciones Tommy Muniz, Inc. v. COPAN, 13 P.R. Offic. Trans. 664, 113 D.P.R. 517, 526 (1982). Parties negotiating an agreement are not obligated to maintain negotiations until a contract is perfected. Id. They are free to proceed on the course that best suits their interests, be it by entering into a contract or by withdrawing from the negotiations. Id. However, in certain circumstances, a withdrawing party may incur civil liability under the doctrine of *culpa in contrahendo* when the negotiating parties fail to finalize an agreement. Velazquez Casillas v. Forest Labs., Inc., 90 F. Supp. 2d 161, 167 (D.P.R. 2000). The cause of action for this kind of liability sounds in Puerto Rico tort law.[5] COPAN, 113 D.P.R. at 528.

The Puerto Rico Supreme Court has made it clear that simply terminating negotiations is not sufficient in and of itself to generate liability. Id. at 530. It is the unjustified or arbitrary termination of negotiations that generates liability. Id. at 528-30. A party to pre-contractual negotiations has "a duty to act in good faith towards the other side." Velazquez Casillas, 90 F. Supp. 2d at 167 (citations omitted); see COPAN, 113 D.P.R. at 526-27 ("Preliminary negotiations . . . generate a social relationship that imposes on the parties the duty to act in good faith."). The unjustified or arbitrary termination of negotiations constitutes a breach of this duty to act in good faith. COPAN, 113 D.P.R. at 528. In determining what constitutes an unjustified termination of the negotiations, the court should consider:

> (1) the development of the negotiations, (2) how they began, (3) their course, (4) the conduct of the parties throughout them, (5) the stage at which the interruption took place, (6) the parties' reasonable expectations to form a contract, as well as any other relevant circumstance under the facts of the case submitted to judicial scrutiny.

---

[5] It is "an extra contractual cause of action pursuant to Article 1802 of the Puerto Rico Civil Code." TC Invs. Corp. v. Becker, 733 F. Supp. 2d 287, 298 (D.P.R. 2010) (quoting Shelley v. Trafalgar House Pub. Ltd. Co., 977 F. Supp. 95, 98 n.6 (D.P.R. 1997)).

Id. at 530.

Under the doctrine of *culpa in contrahendo*, a withdrawing party may be liable for damages in the absence of a binding agreement, "if it fails to negotiate in good faith when the other party had reasonable expectations that an agreement would finally be reached among the parties." WHTV Broad. Corp. v. Centennial Commc'ns Corp., 460 F. Supp. 2d 297, 306 (D.P.R. 2006) (citing Colon v. Glamorous Nails, 167 D.P.R. 33 (P.R. 2006)). "The imposition of *culpa in contrahendo* liability must be done so restrictively." Velazquez Casillas, 90 F. Supp. 2d at 170 (citing Torres v.Garcia, 19 P.R. Offic. Trans. 742, 119 D.P.R. 698, 710 (1987)).

The question before the court is whether Defendants incurred liability when they terminated the negotiations with AFC, and if, as a result thereof, they must compensate AFC for its damages. The court finds in the negative.

Considering the factors outlined in COPAN, the evidence on record does not warrant a determination that Defendants failed to act in good faith, and are thus liable for pre-contractual damages. The court reiterates that, regardless of AFC's non-compliance with the Local Rules in its opposition to GE Sensing's motion for summary judgment (Docket No. 76), it looked at AFC's renewed motion for partial summary judgment and corresponding exhibits (Docket No. 97) in making this determination.

AFC's argument that Defendants did not negotiate in good faith because they did not provide the correct specifications for the heater filaments does not pass muster. Defendants did not manufacture the heater filament, did not know how to manufacture the heater filament, and did not have all the information regarding the heater filament. Yes America was aware of this throughout the negotiations. (See Docket Nos. 68-3 at 2 ¶ 6.) The record shows AFC was also aware Defendants did not manufacture the heater filament and was eventually informed that Defendants did not have all the information necessary to manufacture the part. (See Docket No. 68-4 at 16-17.). AFC cannot have reasonably expected Defendants to provide them with exact specifications, while knowing Defendants did not have them. It was AFC who began negotiations by stating it could and had the experience manufacturing the heater filament. Any specifications given by Defendants were not meant to mislead AFC. The evidence submitted by AFC does not support a contrary conclusion –*e.g.*,

an e-mail sent by Cedo to AFC providing some specifications begins with, "I found some details that **may be useful** for you." (See Docket No. 97-2 at 12) (emphasis ours).

GE Sensing was under the impression AFC was "qualified and capable of engineering and manufacturing quality heater filaments" and that it "had experience with the manufacturing of the same type of heater filaments used in the catheter component assembly at the Añasco facility." (See Docket Nos. 68-1 at 3 ¶¶ 10 & 11; 76 at 1.) Defendants relied on AFC's representations "of experience and expertise in engineering and manufacturing the incident filament component." (See Docket Nos. 68-1 at 4 ¶ 17; 76 at 1.)

Furthermore, AFC could not have had a reasonable expectation of finalizing a contract, while it still had not submitted a sample group of heater filaments that passed the quality test. It was a prerequisite for AFC to provide a filament sample that would pass quality standards testing before any agreement could be reached. Both AFC and it's representative, Yes America, were cognizant of this fact during negotiations. At the time of the initial communications between GE PR and Yes America, Cedo told Hidalgo that samples of the heater filaments proposed for sale would be subject to a testing or validation protocol, and that the samples would have to pass that testing before any purchase of the filaments would be considered.[6] (See Docket No. 68-3 at 2 ¶ 7.) Angeli, GE Sensing's point person for the negotiations with AFC for the proposed supply of the heater filaments,[7] states he informed Bailey on multiple occasions during the course of negotiations that before any final contract terms could be cemented, it was necessary for AFC to first produce sample parts that passed the aforementioned evaluation and validation processes. (See Docket No. 68-2 at 3 ¶ 9.) In her deposition, Bailey admits to being aware of the existence of this complex validation process, and that at least part of the validation process had to be passed before there could be a contract. (See Docket No. 68-4 at 22-23.) When asked if she had been told that the finalization of the contract was

---

[6] Cedo further told Hidalgo that any proposed purchase order or contract for the sale of any heater filaments would be determined by her superiors. (See Docket No. 68-3 at 2 ¶ 7.)

[7] (See Docket No. 68-2 at 2 ¶ 7.)

dependent on the AFC samples passing the testing in the Añasco facility, Bailey responded "that was always our understanding, and that would have been what we wanted . . . ." (See id. at 21 ll. 8-21.) AFC's exhibits also support this finding. AFC submitted an e-mail written by Cedo to Bailey, in which Cedo writes: "**If** samples meet the specifications and the test accordingly we have 90% confidence that we can win this business for you." (See Docket No. 97-2 at 11) (emphasis ours).

All four sample groups submitted by AFC failed. Bailey admitted in her deposition that the reasons given to AFC for the first and second group of samples failing testing were reasonable. (See Docket No. 68-4 at 61 & 71.) It was not until after the fourth group failed that Defendants withdrew from the negotiations.

The record before the court does not allow for the conclusion that Defendants failed to negotiate in good faith. The evidence is not sufficient to maintain a claim of *culpa in contrahendo*. Accordingly, the court **GRANTS** summary judgment in favor of Defendants and **DISMISSES** AFC's *culpa in contrahendo* claims.

### VI.    Conclusion

For the foregoing reasons, the court **GRANTS** GE Sensing's motion for summary judgment at Docket No. 68 and GE PR's motion for summary judgment at Docket No. 70. The court finds GE Sensing's alternative motion for partial summary judgment at Docket No. 69 to be **MOOT**. AFC's renewed motion for partial summary judgment at Docket No. 97 is **DENIED**.

**SO ORDERED.**

In San Juan, Puerto Rico this 3rd day of July, 2012.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge